UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CREAMER BROTHERS INC ET AL          CIVIL ACTION NO. 22-6110

VERSUS                              JUDGE EDWARDS

GENERAL CASUALTY CO OF              MAGISTRATE JUDGE HORNSBY
WISCONSIN

<u>MEMORANDUM RULING</u>

Pending before the Court is a Motion for Judgment on the Pleadings (R. Doc. 34) filed by the defendant, General Casualty Company of Wisconsin (the "Insurer"). The plaintiffs, Creamer Brothers Inc., Creamer Property Management, LLC, and Creamer Trucking Company, LLC, (the "Creamer Plaintiffs"), oppose (R. Doc. 39), and the Insurer replied (R. Doc. 40).  The Creamer Plaintiffs moved for, and were granted, leave to file a supplemental memorandum (R. Doc. 45), to which the Insurer responded (R. Doc. 48).

After careful consideration of the parties' memoranda and the applicable law, the Insurer's Motion is **DENIED**.

I.      BACKGROUND

On February 15, 2021, an ice storm moved through Shreveport, Louisiana, where the Creamer Plaintiffs' principal office is located.  R. Doc. 1-1 at 3–4.  The ice storm allegedly caused severe damage to three buildings on the property, namely their roofs.  *Id* at 4.  When the storm hit, the Creamer Plaintiffs held an insurance policy with the Insurer.  *Id*.  Thus, the Creamer Plaintiffs seek payment for losses that they contend the storm caused.  *Id*. at 6–8.  Conversely, the Insurer alleges that

1

most of the claimed roof damage predated the storm.  R. Doc. 33 at 11.  Accordingly, the Insurer eventually refused to pay many of the claims asserted by the Creamer Plaintiffs, so the Creamer Plaintiffs filed this suit in state court.  *See* R. Doc. 1-1.  In their state court Petition, the Creamer Plaintiffs seek not only what is allegedly owed to them under the insurance policy, but also "bad faith" statutory penalties under La. R.S. 22:1973.  *Id.* at 6.  The suit was subsequently removed to this Court on the basis of diversity jurisdiction.  R. Doc. 1.

The Creamer Plaintiffs reference in their Petition an assignment agreement executed in favor of the contractor that repaired their roofs, Witten Roofing, LLC ("Witten Roofing").  R. Doc. 1-1 at 5–6.  The Petition alleges that this agreement assigned to Witten Roofing "any insurance benefits and rights under any policy of insurance on the damaged property."  *Id.* at 5.  No meaningful motion practice was conducted until the functional eve of trial when, in a footnote to the proposed pretrial order, the Insurer asserted that the Creamer Plaintiffs *may* lack a right of action to pursue these claims due to this assignment agreement with Witten Roofing.  R. Doc. 33 at 7, n.9.

In light of this potentially blockbuster revelation, the Court asked for supplemental briefs from both parties, stating their positions on the potential necessity of Witten Roofing as a party.  *See* R. Doc. 32.  In lieu of supplemental briefing, the Insurer instead filed this Motion, which nonetheless addressed the issue at hand.  *See* R. Doc. 34.  Now assured that the issue of Witten Roofing's potential involvement has been adequately briefed by both parties, we turn to the law.  *See id.*; R. Doc. 39; R. Doc. 40, R. Doc. 45; R. Doc. 48.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[1]  Fed. R. Civ. P. 12(c).  "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted).  According to the Fifth Circuit, the standard for deciding a Rule 12(c) motion for judgment on the pleadings "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.*" In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).  In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.  *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).  Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings but "may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."  *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x. 336, 340 (5th Cir. 2011).  The Court can also "take judicial notice of matters that are of public record, including

---

[1] This Motion has already delayed trial; however, the Court requested briefs, so the usual prohibition against utilizing Rule 12(c) so close to trial will not warrant our disregard of the Motion.

3

pleadings that have been filed in a federal or state court." *In re American Intern. Refinery*, 402 B.R. 728, 749 (Bankr. W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)). The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed liberally." *Great Plains*, 313 F.3d at 312 (citation and internal quotation marks omitted).

## III.   ANALYSIS

The current dispute lies in whether the Creamer Plaintiffs assigned their rights to Witten Roofing such that they no longer have the right to prosecute this suit against the Insurer.  R. Doc. 40 at 2–3.  Under Louisiana law, "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal."  La. Civ. Code art. 2642.  Thus, at the time the subject assignment was executed, the Creamer Plaintiffs were generally empowered to assign away any rights held against their Insurer, including their rights to pursue bad faith penalties under La. R.S. 22:1973.[2]  *See Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.,* No. CIV.A. 07-7965, 2009 WL 86671 at *3–5 (E.D. La. Jan. 13, 2009).  Rights that have been assigned must be enforced by: "(1) [t]he assignor and the assignee, when the assignment is partial; or (2) [t]he assignee, when the entire right is assigned."  La. Code Civ. Proc. art. 698.[3]  Accordingly, if the Creamer Plaintiffs wholly assigned their

---

[2] Formerly cited as La. R.S. 22:1220.
[3] We consider a Louisiana Code of Civil Procedure article here because "[a] federal court sitting in diversity must look to state law to determine which party holds the substantive right." *Farrell Constr. Co. v. Jefferson Par.*, 896 F.2d 136, 140 (5th Cir. 1990); *see e.g., Conerly Corp. v. Regions Bank*, 668 F. Supp. 2d 816, 831 (E.D. La. 2009) (applying La. Code Civ. Proc. art. 698 in federal court); *Nucor Steel Louisiana*, 2022 WL 1773866 at *3 (applying art. 698 in federal court as well).

rights to Witten Roofing, they would have no place in this suit. *See Nucor Steel Louisiana, LLC v. HDI Glob. Ins. Co.*, No. CV 21-1904, 2022 WL 1773866 (E.D. La. June 1, 2022), *aff'd.*, No. 22-30552, 2023 WL 3270903 (5th Cir. May 5, 2023).

## A. The Validity and Scope of the Assignment

### 1. Had the "bad faith" cause of action accrued at the time of assignment?

Until the Creamer Plaintiffs' "Supplemental Memorandum in Opposition" (R. Doc. 45), it was undisputed that the Creamer Plaintiffs had assigned to Witten Roofing, at a minimum, any and all rights to the proceeds owed *under the policy itself*. *See* R. Docs. 1-1, 34, 39, 40. Meaning, those rights that existed when the loss was incurred. The controversy was thus confined to whether the Creamer Plaintiffs had also assigned punitive statutory damages arising out of the Insurer's alleged "bad faith" failure to pay its claim. R. Docs. 39, 40.

Under La. R.S. 22:1973, an insured or claimant can collect bad-faith double damages if the insurer fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." La. R.S. 22:1973. These bad faith claims, however, must have already arisen and been actionable in order to be validly assigned. *Pontchartrain Gardens, Inc.,* 2009 WL 86671 at *4; *see also Del-Remy Corp. v. Lafayette Ins. Co.,* 616 So. 2d 231, 233 (La. Ct. App. 1993). Thus, to determine whether the bad faith claim here was validly assigned, we must determine whether the Insurer had received a "satisfactory proof of loss" from the Creamer Plaintiffs at least sixty days prior to the assignment. La. R.S. 22:1973. During the April 30, 2024, status conference held in this matter, the

5

parties offered February 22nd or 23rd of 2021 as the date that a claim was first submitted to the Insurer.  R. Doc. 44.  However, this initial claim appears insufficient to muster "satisfactory proof of loss" under the bad faith statute.  "Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and extent of the damage." *Lamar Advert. Co. v. Zurich Am. Ins. Co.,* No. CV 18-1060-JWD-RLB, 2021 WL 1113451 (M.D. La. Mar. 22, 2021) (citing *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1115 (La. 2008); *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985)).  The storm, and alleged loss, occurred on February 15, 2021, a mere week before this first claim was made with the insurance company.  R. Doc. 1-1 at 3–4; R. Doc. 44.  Given the nature and location of the damage here—the roofs of three commercial buildings—it is implausible that "sufficient information to act on the claim" could have existed and been conveyed to the Insurer more than sixty days prior to the April 30, 2021, assignment.[4]  *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986); *see also Grilletta v. Lexington Ins. Co.,* 558 F.3d 359, 362–68 (5th Cir. 2009); *J.R.A. Inc. v. Essex Ins. Co.*, 72 So. 3d 862, 881 (La. Ct. App. 2011).  More importantly, whether and when the Insurer received "satisfactory proof of loss" sufficient to trigger the payment periods is a question of fact.  15 William Shelby McKenzie & H. Alston Johnson, III, LA. CIV. L. TREATISE: INSURANCE LAW AND PRACTICE § 11:5 (4th ed. 2020) (citing *McDill*, 475 So. 2d at 1089; *La Louisiane Bakery Co. Ltd. v. Lafayette Ins. Co.,* 61 So. 3d 17 (La. Ct. App. 2011); *Iteld v. Four Corners*

---

[4] Also, while not entirely clear, it appears that Witten Roofing may have conducted the first "inspection" of the damage. R. Doc. 1-1 at 5. But such things are *disputed material facts*.

*Const., L.P.*, 133 So. 3d 312 (La. Ct. App. 2014); *Lemoine v. Mike Munna, L.L.C.,* 148 So. 3d 205 (La. Ct. App. 2014)).   Given that judgment on the pleadings should be granted "only if there are no disputed issues of fact," and given that the pleadings do not support a finding that a claim for bad faith penalties had already accrued at the time of the assignment, the Court cannot conclude that the Creamer Plaintiffs assigned their rights to seek bad faith penalties to Witten Roofing.  *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001); *Great Plains Trust Co.,* 313 F.3d at 312.[5]

   *2.  Was the assignment of the cause of action "express"?*

   Further, even if the bad faith penalties had accrued at the time of the assignment, "[t]he assignment of rights under penalty statutes must be expressly provided for in the act of assignment."  *Witten Roofing LLC v. Liberty Mut. Ins.*, 2024 WL 758564 at *2 (W.D. La., Feb. 23, 2024) (citing *Disaster Relief Services of North Carolina, LLC v. Employers Mutual Cas. Ins. Co*., 2009 WL 935963 (W.D. La. April 6, 2009); *Franks v. Liberty Personal Insurance Company*, 2023 WL 2309819 (W.D. La., March 1, 2023)).  Examining the same contested contractual language now before this Court, the *Witten Roofing* court held the assignment to have not been sufficiently "express" so as to have assigned bad faith penalties.  *Id.*; R. Doc. 34-2.  This Court agrees.  *See Frisbie v. State Farm Fire & Cas. Co*., No. 2:21-CV-03658, 2023 WL 6284272 at *3 (W.D. La. Sept. 26, 2023); *Cat 5 Glob., LLC v. Occidental Fire & Cas. Co. of N. Carolina*, No. CV 23-4130, 2024 WL 169649 at *2 (E.D. La. Jan. 16, 2024);

---

[5] And better yet, the Creamer Plaintiffs still seek business loss damages flowing from the Insurer's failure to pay, which could not have accrued by April 30, 2021, and probably weren't assignable anyway.  *See Pontchartrain Gardens, Inc.,* 2009 WL 86671 at *6–7; R. Doc. 1-1 at 7.

*Johno v. Doe*, 187 So. 3d 581, 585 (La. Ct. App. 2016), *writ denied*, 192 So. 3d 769 (La. 2016).  Accordingly, with no express language assigning bad faith penalties to Witten Roofing, the Creamer Plaintiffs retain their right to bring an action against the Insurer.  R. Doc. 34-2.[6]

> 3. *Did Robert Creamer have capacity to assign the rights of the Creamer Plaintiffs to Witten Roofing?*

The Creamer Plaintiffs argue in their "Supplemental Memorandum in Opposition" that the entire assignment agreement was instead invalid.  R. Doc. 45.  They allege that the agreement was executed by Robert Creamer, not any of the Creamer Plaintiffs, and thus had no effect on their rights under the insurance policy.  *Id.* at 1–3.  The single case cited by the Creamer Plaintiffs for this proposition has nothing to do with capacity or authority.  *See id.* at 2 (citing *DaimlerChrysler Servs. of N. Am., L.L.C. v. Sec'y, Dep't of Revenue*, 970 So. 2d 616, (La. Ct. App. 2007), *writ denied sub nom., DaimlerChrysler Fin. Servs. of N. Am., L.L.C. v. Sec'y, Dep't of Revenue,* 976 So. 2d 725 (La. 2008).  And while the instrument in question does not *explicitly* name any of the Creamer Plaintiffs, it is inconceivable that their shared sole proprietor lacked authority to contract away insurance proceeds owed to them to a third party.  R. Doc. 34-2; *see* R. Doc. 14 (naming "Robert N. Creamer" as the sole shareholder of Creamer Brother's, Inc.; the sole member of Creamer Property Management, LLC; and the sole member of Creamer Trucking Company, LLC.).  "[I]n a small business setting . . . it is fairly common for shareholders to act in

---

[6] Nor do the Creamer Plaintiffs allege the express assignment of bad faith penalties in their state-court Petition.  R. Doc. 1-1 at 5.

representative capacities on behalf of their closely-held corporations (as officers, agents or employees) without formally disclosing to the third party that [it] is this capacity in which they are acting." *Ogea v. Merritt,* 130 So. 3d 888, 905 (La. 2013) (quoting 8 Glenn G. Morris & Wendell H. Holmes, LOUISIANA CIVIL LAW TREATISE: BUSINESS ORGANIZATIONS, § 33.04 (2d ed. 2013). Furthermore, "Robert N. Creamer" is listed in the Caddo Parish Tax Assessor's records[7] as the property owner of 5189 Shreveport-Blanchard Highway—the property alleged to have suffered the loss. This is consistent with his name being placed on the blank for "Property Owner's Name" in the assignment agreement.   R. Doc. 34-2.   Finally, the Creamer Plaintiffs themselves contend in their Petition that the assignment was executed by "Creamer Furniture through Mr. Robert Creamer" and that "Witten [Roofing] has a direct interest in this lawsuit and is a proper party to this proceeding."  R. Doc. 1-1 at 5–6. Accordingly, accepting all well-pleaded facts as true, the Court declines to find that Robert Creamer lacked authority to execute this agreement.   *See, e.g., Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

    *4.  Did the Louisiana Legislature retroactively void the assignment?*

In their "Supplemental Memorandum in Opposition," the Creamer Plaintiffs also now assert the Insurer's prior argument that Louisiana law has been subsequently amended—outlawing this sort of assignment agreement.  R. Doc. 45 at 4–7; R. Doc. 31 at 6.  This is true.  Effective August 1, 2023, La. R.S. 22:1275 provides

---

[7] We take judicial notice of this tax record, last accessed on June 13, 2024, and can consider it in this posture.  *See Creative Realty Inc. v. HD Supply Waterworks Grp. Inc.,* No. CIV.A. 13-2564, 2014 WL 970165 at *2–3 (W.D. La. Mar. 12, 2014); *In re Am. Int'l Refinery*, 402 B.R. at 749.

that: "A person shall not solicit or accept an assignment, in whole or in part, of any post-loss insurance benefit under a residential or commercial property insurance policy. An assignment agreement is against public policy and is null and void."  La. R.S. 22:1275(B)(1).  However, as the assignment in this case was executed in 2021, the Court must determine whether the enactment of La. R.S. 22:1275 retroactively voided previously-executed assignment agreements.[8]  It did not.

In determining whether a law should be given retroactive effect, the Louisiana Supreme Court has outlined a two-step statutory inquiry:

> First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.

*Cole v. Celotex Corp.,* 599 So. 2d 1058, 1063 (La. 1992).  As to the first step, the legislature was silent in its enactment of La. R.S. 22:1275, and the inclusion of the "against public policy" language in the statute does not muster the necessary "clear and unmistakable expression of legislative intent regarding retrospective or prospective application…."  *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 817 (La. 1992).  For the second step, La R.S. 22:1275 is clearly "substantive" because it "change[s] existing [rules, rights, and duties]"; namely, whether Witten Roofing has a right of action at all.  *Id.* at 817; R. Doc. 1-1 at 5–6.  Accordingly, the statute should not be retroactively applied under Louisiana law.  *See* La. Civ. Code. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively

---

[8] We now embark on an *Erie* guess, as the Louisiana Supreme Court has yet to decide the retroactivity of La. R.S. 22:1275.  *See In re Katrina Canal Breaches Litig.,* 495 F.3d at 206.

only."); *see also* La. R.S. 1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated.").   But in order to be sure, we also consider the constitutionality of retroactive application here and find that retroactive application of La. R.S. 22:1275 would likely violate both the United States Constitution and the Louisiana Constitution as well.   *See Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1258–59 (La. 2001) ("The legislature's power to enact retroactive laws is limited by the Due Process and Contract Clauses of the Federal and State Constitutions.") (internal citations omitted).

> As for due process, the Louisiana Supreme Court has stated generally that:
>
> If a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right, protected by the due process guarantees. If retroactive application of the law would divest that party of such a vested right, then retroactive application could be constitutionally impermissible.

*Church Mut. Ins. Co. v. Dardar,* 145 So. 3d 271, 280 (La. 2014) (internal citation omitted); *see also* U.S. Const. amend. XIV, § 1.   And as for contracts, the Louisiana Constitution prohibits the legislature from enacting any law that "impair[s] the obligation of [a] contract[]," which retroactive application of this law would certainly do.   La. Const. art. I, §23.   The United States Constitution prohibits the states from doing the same.   U.S. Const., art. I, § 10; *Landgraf v. USI Film Prods.,* 511 U.S. 244, 266 (1994).   Accordingly, "[w]here the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute."   *Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983).   Here, any rights under the policy and the assignment had accrued—and suit was

already filed—when La. R.S. 22:1275 was enacted.  *See Bourgeois,* 783 So. 2d at 1258–59 ("When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process.")  As La. R.S. 22:1275 is silent as to retroactivity; as it is "substantive"; and as its retroactive application would likely violate the Contracts Clause and deprive the parties of due process, the law cannot operate to undo the assignment agreement currently before the Court.  La. Civ. Code art. 6; La. Const. art. I, §23; U.S. Const., art. I, § 10; U.S. Const. amend. XIV, § 1.

## B. Adding Witten Roofing

Having resolved the validity and scope of the assignment, we move to amendment of the pleadings.  We agree with the Insurer that La. Code Civ. Proc. 698 does not confer standing to the Creamer Plaintiffs to prosecute claims assigned to Witten Roofing alone.  R. Doc. 48 at 4; *see Conerly,* 668 F. Supp. 2d at 831; *see also Nucor Steel Louisiana*, 2022 WL 1773866 at *3.  But as we have concluded that both the Creamer Plaintiffs and Witten Roofing have a remaining interest in this suit, the next hurdle is adding Witten Roofing as a plaintiff, which Article 698 commands.  *See* La. Code Civ. Proc. 698 ("An incorporeal right which has been assigned . . . shall be enforced judicially by: (1) The assignor *and* the assignee, when the assignment is partial") (emphasis added).

### 1. Can Witten Roofing "relate back" to the Creamer Plaintiffs' filing of their Petition in order to avoid prescription?

Foremost, the Insurer contends that Witten Roofing cannot "relate back" to the Creamer Plaintiffs filing of their Petition.  R. Doc. 40 at 4.  The Insurer argues that

the Creamer Plaintiffs, having allegedly assigned all their rights to Witten Roofing, had no legally viable claims themselves when the Petition was filed.  *Id.* at 4–6. Accordingly, the Insurer asserts that the Creamer Plaintiffs' filing did not interrupt prescription or provide a valid pleading to relate back to.  *Id.*  The Court disagrees. As the Court has found that the assignment agreement failed to assign the bad faith claims, the Creamer Plaintiffs did, in fact, have a valid right of action upon filing the initial Petition, rendering the cases cited by the Insurer inapposite.  *Ante* at 7, 8.

With that settled, we must then determine whether it is otherwise permissible to allow Witten Roofing to relate back, which is determined by the test set out by the Louisiana Supreme Court in *Giroir v. South Louisiana Medical Center*.  475 So. 2d 1040, 1044 (La. 1985); *see, e.g., Herrin v. E. Baton Rouge Sheriff's Off.*, 2015 WL 4898489, at *6 (M.D. La. Aug. 17, 2015).[9]  Under *Giroir*, an amended pleading adding or substituting a plaintiff will relate back to the date of the original pleading if: "(1) the amended claim arises out of the same conduct, transaction, or occurrence"; (2) the defendant knew or should have known of the new plaintiff's existence and involvement; (3) the new and old plaintiffs are sufficiently related; and (4) "the defendant will not be prejudiced in preparing and conducting his defense." *Giroir*, 475 So. 2d at 1044.  Here, all four *Giroir* factors weigh in favor of allowing Witten Roofing to relate back.  For the first factor, any claim possibly asserted by Witten Roofing is a claim originally held by the Creamer Plaintiffs, arising out of the same

---

[9] Under Fed. R. Civ. P. 15(c)(1), "[a]n amended pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action."  Here, the law that provides the relevant statute of limitations, or prescriptive period, is Louisiana law; thus, we apply the law of *Giroir*. 475 So.2d at 1044; *Zurich Am. Ins. Co. v. Queens Mach. Co.*, No. CIV.A. 05-3242, 2005 WL 6074914 at *2 (E.D. La. Nov. 21, 2005).

damages, in the same ice storm.  R. Doc. 1-1 at 3–6.  For the second factor, Witten Roofing's involvement in this case has been known to the Insurer since the filing of this suit.  *Id.* at 5–6.  For the third, the Creamer Plaintiffs and Witten Roofing have a "legal relationship," as evidenced by the assignment agreement and Witten Roofing's undertaking of repairs to the Creamer Plaintiffs' property.  *Giroir*, 475 So. 2d at 1045.  And for the fourth and final factor, the Insurer will not be prejudiced in preparing his defense, as no new evidence or additional claims will be added by involving Witten Roofing as a plaintiff.  Thus, relation back is proper.

### 2.  *Have the Creamer Plaintiffs shown "good cause" to amend pleadings?*

Now assured that the subject claims sought to be asserted instead by Witten Roofing are not time-barred, the Court must last determine whether the Creamer Plaintiffs are permitted to amend their pleadings to add Witten Roofing as a party to this suit.  Where the court-ordered deadline for amending pleadings has passed, that schedule "may be modified" to allow for additional amendments "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired.").  When determining whether the movant has shown good cause, the Court considers "'(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'" *S&W Enters.*, 315 F.3d at 536 (quoting *Reliance Ins. Co. v. La.*

*Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)) (alterations in original).  The Court finds good cause to exist.

As to the first factor—the movant's excuse—the Creamer Plaintiffs credibly establish their mistaken belief that the assigned claims remained prosecutable in their name following the assignment.  *See* R. Doc. 45 at 3–4.  Without recognizing the necessity of Witten Roofing's formal presence in the suit until recently, the Creamer Plaintiffs would not have had an incentive otherwise to amend their pleadings. Accordingly, the Court finds this factor to weigh in favor of amendment.  The second factor—the importance of the amendment—also favors the Creamer Plaintiffs. Failing to allow this amendment would confine the Creamer Plaintiffs' case to bad faith and business loss claims, and deny by default the underlying claims for ordinary insurance proceeds held by Witten Roofing.  The third factor—prejudice to the Insurer—is neutral.  The only functional change will be an additional name in the caption of the suit.  Witten Roofing has been known to the Insurer and involved in this suit from the beginning—as a source of both documentary evidence and witnesses—and its representative has already been deposed by the Insurer.  R. Doc. 39 at 5.  Finally, any limited potential prejudice can be cured when the Court resets a trial date.  *See S&W Enters.*, 315 F.3d at 536.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that the Motion (R. Doc. 34) is **DENIED.**  The plaintiffs are granted leave to amend their complaint to add Witten Roofing, Inc., to this suit, and cure additional defects discussed during the pretrial conference.  R. Doc.

32 at 1.  Once Witten Roofing makes an appearance in the matter, the Court will hold

a telephone status conference to set a new trial date.

      **THUS DONE AND SIGNED** this 14th day of June, 2024.


_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

16