UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CREAMER BROTHERS INC ET AL** | **CASE NO.  5:22-CV-06110** |
| **VERSUS** | **JUDGE EDWARDS** |
| **GENERAL CASUALTY CO OF WISCONSIN** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM RULING AND ORDER**

Before the Court is a Motion for Partial Summary Judgment filed by Defendant, General Casualty Company of Wisconsin ("General Casualty").[1] General Casualty seeks summary judgment dismissing plaintiffs' claims for 1) penalties and attorney's fees pursuant to Louisiana Revised Statutes §§ 22:1892 and 22:1973, 2) business income losses, and 3) replacement cost value of plaintiffs' alleged damages. Plaintiffs, Creamer Property Management, LLC and Creamer Trucking Company, LLC d/b/a Creamer Furniture (the "Creamer Plaintiffs"), and Witten Roofing, LLC ("Witten") (collectively "Plaintiffs") oppose summary judgment on their claims for penalties, attorney' fees and the replacement cost value of their damages. However, the Creamer Plaintiffs no longer wish to pursue their claim for business income losses.[2] For the reasons set forth hereafter, summary judgment is **GRANTED** dismissing Plaintiffs' claims for penalties and attorney's fees and **DENIED** to the

---

[1] R. Doc. 67.
[2] Plaintiffs' counsel informed the Court during the pretrial conference held on March 5, 2025, that the Creamer Plaintiffs are no longer pursuing their claim for business income losses. Accordingly, this claim will not be addressed in this ruling.

extent General Casualty seeks to dismiss Plaintiffs' claims for the replacement cost value of their damages. Summary judgment on the Creamer Plaintiffs' claim for business income losses is **DENIED AS MOOT.**

### BACKGROUND

This case stems from the February 15, 2021, ice storm in Shreveport, Louisiana. The undisputed facts establish that at the time of the storm, General Casualty had in effect a policy of insurance with the Creamer Plaintiffs.[3] On February 22, 2021, the Creamer Plaintiffs made a claim under the insurance policy to recover losses they contend the storm caused.[4]

General Casualty's adjuster inspected the Creamer Plaintiffs' property on February 26, 2021.[5] On April 9, 2021, the adjuster completed an estimate of the Creamer Plaintiffs' claim reflecting a replacement cost value ("RCV") of $21,697.58.[6] Based on this estimate, General Casualty issued payment to the Creamer Plaintiffs on April 15, 2021, in the amount of $11,553.05 after accounting for depreciation ($5,144.53) and the deductible in the policy ($5,000.00).[7]

On April 30, 2021, the Creamer Plaintiffs executed an Assignment of Insurance Benefits to Witten, assigning to Witten payments made by General Casualty for certain claims under the insurance policy.[8] Witten prepared its own damage estimate and transmitted it to General Casualty on August 6, 2021.[9] Witten's estimate

---

[3] R. Doc. 67-20 at 1.
[4] R. Doc. 1-1 at 6-8; R. Doc. 67-2 at 2.
[5] R. Doc. 67-2 at 2.
[6] R. Doc. 67-2 at 2.
[7] R. Doc. 67-2 at 2.
[8] R. Doc. 34-2.
[9] R. Doc. 67-2 at 2.

reflected a Dwelling RCV of $1,117,186.24 and a Contents claim of $30,815.95.[10] General Casualty confirmed receipt of this estimate with the Plaintiffs on August 9, 2021 and informed them that a re-inspection of the property would be conducted by CSF Services, LP ("CSF").[11] On August 20, 2021, CSF contacted Plaintiffs and arranged for the re-inspection of the property to occur on August 26, 2021.[12] CSF informed Plaintiffs that an engineer would assist in the re-inspection.[13] The re-inspection occurred as scheduled.[14]

On September 24, 2021, the engineer's report was submitted to CSF and General Casualty.[15] This report asserted that damage to the roofs on the property was historical and pre-dated the February 2021 storm.[16] However, the engineer reported that damage caused by internal moisture intrusion was caused by the storm.[17] Based on the engineer's report, CSF prepared a estimate for General Casualty on October 7, 2021, that reflected a RCV of $90,360.96.[18] Based on this estimate, General Casualty issued payment to the Creamer Plaintiffs on October 11, 2021, in the amount of $66,135.50 after accounting for depreciation ($7,692.61), the deductible ($5,000.00) and the prior payment of ($11,553.05).[19]

---

[10] R. Doc. 67-2 at 2.
[11] R. Doc. 67-8.
[12] R. Doc. 67-9.
[13] R. Doc. 67-9.
[14] R. Doc. 67-10.
[15] R. Doc. 67-10.
[16] R. Doc. 67-10.
[17] R. Doc. 67-10 at 8, 10.
[18] R. Doc. 67-11.
[19] R. Doc. 67-12.

On January 7, 2022, General Casualty received a rebuttal engineering report from Plaintiffs.[20] General Casualty produced a supplemental rebuttal engineering report on January 25, 2022.[21] The instant suit was filed on October 12, 2022.[22]

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[24] "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-moving party."[25] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[26]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of

---

[20] R. Doc. 67-3.
[21] R. Doc. 67-15.
[22] R. Doc. 1-1 at 3.
[23] Fed. R. Civ. P. 56(a).
[24] *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case."
[25] *Id.* (internal quotations omitted).
[26] *Total E&P UDS Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

a genuine issue of material fact."[27] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[28] Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[29]

## LAW AND ANALYSIS

### A. Penalties and Attorney's fees

La. R.S. 22:1892 and La. R.S. 22:1973 (the "bad-faith statutes") penalize insurers for failing to pay claims after receiving satisfactory proof of loss, but only if such failure is "arbitrary, capricious, or without probable cause."[30]

Under the bad-faith statutes, "the insured has the burden of proving that the insurer acted in bad faith."[31] When determining whether an insurer's refusal to pay was "arbitrary" or "capricious," the Fifth Circuit has held a "vexatious refusal to pay" or a "refusal to pay without reason or justification" would constitute bad faith.[32] The Louisiana Supreme Court has held that "any insurer who fails to pay said undisputed amount has acted in a manner, that is, by definition, arbitrary, capricious or without

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247).
[28] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).
[29] *Id.; see also Hamilton v. Segue Software, Inc.* 232 F.3d 473, 477 (5th Cir. 2000). The opposing party must show, with significant probative evidence, that a genuine issue of material fact exists to rebut a properly supported motion for summary judgment.
[30] "The primary difference between the two statutory provisions is the time periods allowed for payment." *Jones v. Johnson,* 45,847 (La. App. 2d Cir. 12/15/10), 56 So.3d 1016, 1021.
[31] *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. Appx. 671, 679 (5th Cir. 2009) (*citing Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003).
[32] *Id.*

probable cause."[33] However, an insurer's refusal to pay a claim or withholding of funds is not in bad faith when based on a genuine dispute over coverage.[34]

General Casualty asks this Court to grant summary judgment on Plaintiffs' claims that it withheld insurance payments in "bad faith."[35] In support of summary judgment, General Casualty asserts that its damage assessment – conducted by its adjuster, engineer, and CSF – created a reasonable, well-founded dispute as to the extent of the damage caused by the winter storm of February 2021. Specifically, General Casualty directs the Court to the fact that it took necessary steps to conduct a diligent and thorough report by hiring several experts as well as researching the effects of windy and icy conditions on the material used by the Creamer Plaintiffs to care for its roof.[36] General Casualty asserts that their investigation and communication with Plaintiffs was in good faith, and the record is devoid of evidence suggesting otherwise. Accordingly, General Casualty believes summary judgment on the issue of bad faith is warranted.

Plaintiffs disagree and assert that the dismissal of its bad faith claims is not appropriate at this summary judgment stage. To survive summary judgment on its claims, Plaintiffs must demonstrate that the record illustrates a genuine issue of fact as to whether General Casualty withheld insurance payments in a manner that was "arbitrary" or "capricious" or "without probable cause."[37] Plaintiffs would succeed on

---

[33] *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1115 (La. 2008).
[34] *See Versai*, 597 F.3d. at 737 ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.").
[35] *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. Appx. 671, 679 (5th Cir. 2009) (*citing Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003); *see also* La. R.S. 22:1892.
[36] R. Doc. 67-1, p.8.
[37] *Versai Management Corp. v. Clarendon America Ins. Co.*, 597 F.3d 729, 738-39 (5th Cir. 2010).

their burden by directing the Court to record evidence indicating that General Casualty "refus[ed] to pay without reason or justification."[38] Plaintiffs direct the Court to the fact that General Casualty relied solely on its own experts in assessing the condition of Creamer Plaintiffs' roof, as evidence of its bad faith.[39] Plaintiffs appear to argue that General Casualty's withholding of insurance payments was "arbitrary" and "capricious" because the underlying investigation was so inadequate as to be deemed unreasonable.[40]

Specifically, Plaintiffs point to their own engineering report as evidence of General Casualty's faulty investigation.[41] For example, Plaintiffs' engineering report challenged General Casualty's method of inspection claiming that it failed to account for employees with "first-hand knowledge" to understand what areas of damage were new and which pre-dated the ice storm.[42] Further, Plaintiffs' report criticized General Casualty's use of aerial photographs of the site's roof and asserted that the low-resolution photographs resulted in misinterpreted data points and the mistaken conclusion that prior extensive roof damage existed.[43]

However, the fact that the parties' experts reached different conclusions in their respective assessments gives rise to a dispute in the extent of Plaintiffs' coverage, but does not illustrate a genuine issue of fact as to General Casualty's "bad faith." Rather, the instant summary judgment turns on whether Plaintiffs offered

---

[38] *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. Appx. 671, 679 (5th Cir. 2009) (*citing Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003).
[39] R. Doc. 73, p.6-7.
[40] R. Doc. 73, p.5.
[41] R. Doc. 73, p.8-9.
[42] R. Doc. 73, p.9.
[43] R. Doc. 73, p.9.

evidence to support a finding that General Casualty acted in a manner that was "arbitrary," "capricious," or "without probable cause" in their withholding of disputed insurance payments to Plaintiffs.

Plaintiffs did not show such evidence. Plaintiffs' criticism of General Casualty's methods – i.e., not taking statements of those with "first-hand knowledge" and forming a conclusion based, in part, on aerial photographs – do not indicate an "arbitrary" and "capricious" manner of inspection. The record reflects that General Casualty sufficiently communicated with Plaintiffs throughout their inspection;[44] provided Plaintiffs with multiple expert reports containing their data and conclusions;[45] and ultimately made payments to Plaintiffs in accordance with those conclusions.[46] Plaintiffs did not point to evidence that creates a genuine dispute that General Casualty's conduct – despite yielding unsatisfactory results – was "arbitrary," "capricious," or "without probable cause."[47]

### B. Replacement Cost Value

General Casualty seeks summary judgment dismissing Plaintiffs' claims for the replacement cost value of their property damage. The parties do not dispute the applicable terms of the insurance policy which provide in pertinent part: "we will determine the value of Covered Property, as follows: (1) At replacement cost without

---

[44] *See* R. Doc. 67-2 at 2; R. Doc. 67-8; R. Doc. 67-10.
[45] *See* R. Doc. 67-15; R. Doc. 67-1, p.8.
[46] R. Doc. 67-12; *see also Lee v. State Farm Fire & Casualty Co.*, 636 F.Supp.3d 704, 712 (W.D. La. Oct. 24, 2022) (The Court denied summary judgment dismissing plaintiff's bad faith claims and found that insurer's failure to sufficiently communicate the date and finding of its inspection to the insured; insurer's gross underestimation of insured's value of loss; and the fact that insurer's justifications "appear arbitrary" were facts that gave rise to an issue of material fact as to whether the insured acted arbitrarily and capriciously.)
[47] *See* La. R.S. 22:1892 and La. R.S. 22:1973.

deduction for depreciation, subject to the following: … (d) we will not pay on a replacement cost basis for any loss or damage: (i) until the lost or damaged property is actually repaired or replaced; and (ii) unless the repair or replacement is made as soon as reasonably possible after the loss or damage."[48] General Casualty contends that Plaintiffs are not entitled to replacement cost value because "[p]laintiffs have not repaired or replaced its damaged property… ."[49] In response, Plaintiffs contend that "had the Defendant paid Plaintiffs what was due under the policy … Plaintiff[s] could have repaired or replace[d] the insured property."[50]

While there is no dispute regarding the meaning of the terms of the policy, the Court finds that the briefing on this issue leaves questions of fact regarding which of the Plaintiffs' damage claims would be ineligible for replacement cost value. The evidence shows that General Casualty paid some portion of the claims asserted by Plaintiffs. Presumably, some portion of the damaged property was repaired or replaced in a timely enough manner to qualify for replacement cost value and the parties will need to establish at trial which of the damage claims do not. It is likely that some property was never repaired or replaced, or that other property was not repaired or replaced "as soon as reasonably possible after the loss" - the latter of which is fertile ground for genuine disputes of fact. To grant summary judgment, untethered to the facts, would do nothing more than establish that the policy means what it says.

**CONCLUSION**

---

[48] R. Doc. 67-3 at 26-27.
[49] R. Doc. 67-1 at 24.
[50] R. Doc. 73 at 14.

For the reasons set forth above,

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed by Defendant, General Casualty Company of Wisconsin (Doc. 67) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** dismissing Plaintiffs' claims for penalties and attorney' fees and **DENIED** to the extent General Casualty seeks to dismiss Plaintiffs' claims for the replacement cost value of their damages. Summary judgment on the Creamer Plaintiffs' claim for business income losses is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** this 13th day of March, 2025.

_____
**JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE**